UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:17-CV-80281-ROSENBERG/REINHART

THERESA PEER,

   Plaintiff,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

   Defendant.
_____/

# ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND GRANTING DEFENDANT'S MOTIONS FOR ATTORNEY'S FEES

This cause is before the Court upon Defendant's Motion for Attorney's Fees [DE 71], Plaintiff's Motion for Attorney's Fees [DE 48], and Defendant's Motion for Appellate Attorney's Fees [DE 86].[1] Plaintiff's Motion is granted in part and denied in part. Defendant's Motions are granted. Because the Court's award of fees to Defendant warrants a detailed explanation, the Court sets forth the unusual history of this case below. Next, the Court addresses the merits of the parties' competing motions for attorney's fees.

## The History of Litigation in this Case

Plaintiff initiated this action in March of 2017. Plaintiff alleged that she was totally disabled, that she had an insurance policy with Defendant, that the policy contained a waiver-of-

---

[1] Defendant's Motion for Appellate Attorney's Fees was transferred to this Court by the Eleventh Circuit Court of Appeals. DE 86. Although Plaintiff lost on appeal, Plaintiff filed a Motion for Appellate Attorney's Fees wherein Plaintiff sought $43,876.50; the Eleventh Circuit denied the Motion. *Id.*

premium-benefit for insureds who were totally disabled, and that Defendant had wrongfully denied Plaintiff that benefit. DE 1.

In July of 2017, Plaintiff filed a motion for summary judgment seeking a determination that she was entitled to her waiver-of-premium-benefit. On August 2, 2017, Defendant responded to Plaintiff's motion by informing the Court that it had voluntarily reinstated Plaintiff's requested benefit and that it had done so retroactively so that Plaintiff would have no gap in coverage. When Defendant reinstated Plaintiff's benefit, Defendant also offered to pay Plaintiff's counsel a reasonable attorney fee so that the case could be closed and Defendant could avoid additional litigation costs. *See* DE 86 at 3. Defendant contended that because of its reinstatement of Plaintiff's benefit, the case had become moot. DE 21 at 3.

When the Court received notification from Defendant that Plaintiff had received the relief sought in her Complaint retroactively, the Court could see no reason to disagree with Defendant that the case had become moot. Accordingly, the Court issued an order to show cause, to Plaintiff, seeking an explanation why the case should not be closed:

> On or before Friday August 4, 2017 at 5:00 pm Plaintiff must show cause, in writing, why Plaintiff's Motion for Summary Judgment should not be denied as moot in light of Defendant's Response in Opposition. The Court notes that if the Motion for Summary Judgment is denied as moot and the case is administratively closed, the parties would remain free to litigate attorney's fees.

DE 22. Plaintiff responded to the Court's order to show cause, but Plaintiff's response was difficult to understand. By way of example, the response included the following block paragraph:

> A defendant's statement that it has changed its position cannot suffice to satisfy the heavy burden [of mootness]. (*United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968). In the context of the present action, that last statement bears repeating. A defendant's statement that it has changed its position cannot satisfy its heavy burden. (*Id.*) In the present context, it is not even clear that Liberty Life has made any statement at all. There is one sentence in argument

2

> authored by Liberty's attorney. That is all. It is supported neither by the record nor by affidavit. As an officer of the Court, Peer's attorney can attest to the fact that this sentence was the first notice of any kind given to Peer's attorney in any form that Liberty had changed its position and allegedly voluntarily reinstated Peer's waiver of premium benefit. It may also be said that this change had not been communicated previously to anyone other than possibly Liberty's lawyer. It is further not even clear whether it was intended to communicate an internal communication, whether it reflected a future event intended to take place thereafter or what "voluntarily" might mean. "Reservation of rights" language in insurance industry communications for example indicates that no predicate right has necessarily been found to have been fulfilled, merely that temporarily benefits under an insurance policy are being paid. The absolutely extraordinary and far-reaching effect Liberty's lawyer's argument was apparently intended to have on Peer's claims in the pending action is frankly beyond belief.

DE 23 at 3-4.[2] What the Court could discern from Plaintiff's response was that Plaintiff's counsel represented that her motion for summary judgment was not moot, that the Court should not accept Defendant's counsel's representation that the benefit had been reinstated and that litigation should continue. Thus, even though the Court could not discern what remained to be adjudicated in the case, the Court accepted Plaintiff's demand for a formal ruling on her motion for summary judgment and the Court ordered that briefing on the motion for summary judgment would resume. DE 24.

Motion practice continued. Plaintiff eventually conceded that her waiver of premium benefit had been reinstated by Defendant and, as a result, the Court denied Plaintiff's motion for summary judgment as moot. DE 40. Plaintiff contended that the mootness of her motion for summary judgment did not mean that her entire case was moot, but the Court could not discern how this was so. Plaintiff's Complaint did contain certain references to events in the future and a desire for the Court to adjudicate something about those events, but the Court could see no legal

---

[2] Plaintiff's counsel's representation to the Court that the first time he learned of the reinstatement of benefits was Defendant's filing is in direct conflict with record evidence that he was informed by e-mail of the same prior to Defendant's filing. DE 71 at 3.

basis (and Plaintiff provided none) for the Court to adjudicate hypothetical future events. The Court's confusion was sufficiently great that the Court employed a case management procedure that it had never employed before—the Court ordered Plaintiff to file a statement of the remaining issues in the case that needed adjudication. DE 41. Plaintiff's response to the Court's order again was difficult for the Court to comprehend. Plaintiff's response included the following:

> The relief available under ERISA's reticulated remedial provision embraces a declaration by the Court determining Peer to be entitled to the benefits being sought, but this declaratory relief still is outstanding and as yet not found by the Court. (It might strike the Court as odd that Liberty has not admitted expressly that Peer met the definition of "Disability" under the policy nor agreed by stipulation filed with the Court that Peer is "Disabled" or even deemed "Disabled" by Liberty.) Peer has been called upon previously by the Court to explain what relief is required by ERISA, 29 U.S.C. §1132(a)(1)(B) in the face of Liberty's argument that the case was mooted by Liberty's administrative reinstatement of Peer's benefits. (Liberty even made the extraordinary claim that its unilateral decision to reinstate Peer to benefit status deprived this Court of subject matter jurisdiction and consequently that the Court should dismiss the present action as moot.) On short notice Peer was fortunate to be able to locate a case disposing of just an argument in *Lamuth v. Hartford Life and Accident Ins. Co.*, 30 F. Supp. 3D 1036 (E.D. Wash., 2014) ("For the reasons that follow, the Court finds that Dr. Lamuth's claim for payment of benefits is moot, but her claim for a clarification of rights regarding the Pre-existing Condition Limitation and her date of Disability is not.") (*Id.*, 1043.) Peer was also able to locate Dr. Lamuth's memorandum of law arguing that her case was not moot and filed that memorandum in the present action. (Doc. No. 24.) It is less clear here that in Lamuth, that Liberty has actually determined Peer eligible for benefits, Peer is therefore in even more need of and indeed entitled by 29 U.S.C. §1132(a)(1)(B) to a finding by this Court that Peer has met the definition of "Disabled" under the Liberty policy. (Cf. *Lamuth, supra*, 1042.) ("Hartford granted Dr. Lamuth's claim . . . Hartford explained that Dr. Lamuth 'is eligible for benefits under the terms of the Policy. . .'") Without such a finding that Peer is "Disabled" and entitled to benefits under the Liberty policy, Peer is similarly unable to determine the date of her "Disability" with any certainty. That date, whether as reinstated by Liberty or determined by the Court fixes the date for commencement of the annual review by Liberty of Peer's entitlement to benefits under the Liberty policy. The Liberty policy, namely, proceeds from year to year with benefits certified at one year intervals each year and with a three-month window preceding each subsequent anniversary date for Liberty to review Peer's continued "Disability." In short Peer is entitled to a determination by a finding by the Court that she is "Disabled" under the Liberty policy. Not only that, but Peer is entitled to an order clarifying her right

4

> to future benefits under the Liberty policy, pursuant to 29 U.S.C. §1132(a)(1)(B). These are statutory rights, granted by ERISA itself in its reticulated remedial provision, to wit, 29 U.S.C. §1132(a)(1)(B).

DE 45 at 3. In a detailed order, the Court attempted to analyze Plaintiff's remaining issues for trial. DE 46. The Court divided Plaintiff's remaining issues into three broad categories. First, Plaintiff sought relief on issues that were moot. For example, Plaintiff stated that she wanted a determination that she was disabled in the present, but the Court had already denied Plaintiff's motion for summary judgment on that very issue as moot. DE 46 at 2. Second, Plaintiff stated that she wanted the Court to adjudicate her disability status *in the future*. The Court ruled as follows: "The Court also fails to see, and Plaintiff fails to provide any cogent legal argument, how the Court may adjudicate Plaintiff's disability status in the future." Third and finally, Plaintiff sought relief as follows: "In clarification of Peer's future benefits, what time frames apply to the dates beginning the anniversaries upon which Liberty is allowed to review Peer's entitlement to benefits in the future" and "If the Court must make such [disability] determination independent of Liberty's reinstatement of Peer's benefits, do Liberty's procedural violations require that the Court apply the de novo standard of review, regardless of any discretionary provision in the Liberty policy." *Id.* at 3-4. With respect to this final category, the Court ruled that if Plaintiff felt that her case was not moot, she was required to file an amended complaint that clearly explained the factual and legal basis entitling her to that relief. *Id.*

Plaintiff accepted the Court's offer to amend her Complaint. Her amended complaint, however, was filed in violation of the Local Rules of this District. Plaintiff's amended complaint incorporated forty-six paragraphs from her original complaint, a practice that was prohibited by Local Rule 15.1. The Court struck Plaintiff's amended complaint and ordered Plaintiff to file a

5

new amended complaint. DE 49. Plaintiff's second amended complaint, however, instead of incorporating her original complaint, block quoted her original complaint, even though the original complaint contained claims that had been held by the Court to be moot. DE 50.

Plaintiff's second amended complaint continued to confuse the Court as the Court still could not discern the relief that Plaintiff was seeking and how the Court could provide that relief. As a result, for the second time the Court utilized an unusual case management procedure and issued interrogatories directly to Plaintiff's counsel:

> By 2/27/18, Plaintiff shall file a Notice answering the following questions: (1) Does this case present only questions of law such that it could be resolved on motions for summary judgment? (2) Are there fact issues that need to be resolved by a fact-finder? (3) If the answer to question 2 is yes, what are the fact issues that must be resolved by a fact-finder?

DE 52. Plaintiff responded to the Court's order by stating that there were no factual issues for the Court to decide, but that there were legal issues that remained to be decided. The Court therefore set a status conference for Plaintiff's counsel to explain to the Court, in person, what relief needed adjudication. Before the status conference, however, Defendant filed a motion to dismiss, arguing, *inter alia*, that the second amended complaint should be dismissed because it mirrored the original complaint which the Court had held to be moot. DE 59.

At the status conference, the Court heard argument on the motion to dismiss. Because the second amended complaint quoted the original complaint's claims that the Court ruled were moot, the Court granted the motion to dismiss as to those claims. On whatever remained, however, the Court reasoned that the best vehicle to resolve those claims (which Plaintiff contended were purely legal issues) was a motion for judgment on the pleadings. The Court therefore ordered Defendant to file a motion for judgment on the pleadings and denied the remainder of the motion to dismiss

6

in the interim. Defendant complied, arguing in its motion for judgment on the pleadings that (just as the Court had previously ruled) the Court could not adjudicate the future disability of the Plaintiff and that without an adverse benefits determination for Plaintiff to contest there was no case or controversy between the parties. DE 66.

In contrast to the targeted legal argument raised in the Defendant's motion, Plaintiff's response cited inapplicable case law and did not respond to the motion in a cogent way, including the following:

> Defendant conspicuously avoids the issue of how, having granted Peer beneficiary status after Peer filed her Motion for Summary Judgment, Peer can be construed by the Court to be anything other than Totally Disabled under the terms of the Plan. This is the necessary and unavoidable conclusion which the Court must draw as a matter of law in construing the contract which Defendant now proffers as its policy. What ERISA itself provides as relief in 29 U.S.C. §1132 a)(1)(B) are three independent phrases separated by the disjunctive "or." ("A civil action may be brought – (1) by a participant or beneficiary – (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, *or* to clarify his rights to future benefits under the terms of the plan . . . .")( *Id*.), (Emphasis added.) Now that the terms of Peer's plan have been examined above, what significance does the word "or" actually have? As it happens, on April 9, 2018 the Supreme Court based the entire rationale of its majority opinion on that two-letter word "or." (See *Encino Motorcars, LLC v. Navarro*, – U.S. – (2018), (holding that service advisors at car dealerships are exempt from the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*.). The Court wrote that "or" is almost always disjunctive. (*Id*.), citing and quoting *United States v. Woods,* 571 U.S. 31, 45 (2013). The Court rejected the so-called "distributive canon" of statutory construction, holding that the context favored "the ordinary disjunctive meaning of 'or' for at least three reasons. First, application of the distributive canon would mix and match some of three nouns –"salesman, partsman, or mechanic" with one of two gerunds – "selling or servicing," leaving it to the reader to figure out the precise combinations. Secondly, the distributive canon has the most force when "an ordinary, disjunctive reading is linguistically impossible." The Court added: "Third, a narrow distributive phrasing is an unnatural fit here because the entire exemption bespeaks breadth." The Court favored "the more natural reading." (*Id*.) 20. ""Or" means "or" is the more natural reading. An ERISA participant or beneficiary may seek relief under 29 U.S.C. §1132(a)(1)(B) "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, *or* to clarify his rights under the terms of the plan. . . ." (*Id*.), (Emphasis added.) "Or" here means the disjunctive

7

"or." As any parent knows, "no" (another two letter word) means "no." "No" means "no," and "or" means "or."

DE 67 at 5-6.

The Court granted Defendant's motion for judgment on the pleadings, ruling once again that Plaintiff's claims in the present were moot and that her claims targeted towards future hypothetical controversies could not be adjudicated. DE 69. In response, Plaintiff filed a notice of appeal. The Eleventh Circuit affirmed this Court's decision, holding:

> We first address the denial of Peer's Waiver of Premium claim. Peer states in her complaint—and reiterates on appeal—that she seeks a determination of life insurance coverage pursuant to the plan's Waiver of Premium provision. But as the district court correctly held, the claim is moot because Liberty reversed its initial adverse benefits determination and reinstated Peer's coverage. Accordingly, Peer has already received the relief that she seeks, and "there is no further relief that the Court can award [Peer] on her claim for an award of the Waiver of Premium benefit." *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (holding that "[Plaintiff's] benefit claim became moot when the Plan paid it in full"). The district court did not err in denying Peer's Waiver of Premium claim; she had already received the benefit retroactively without a gap in coverage.
>
> Peer next contends that the district court improperly dismissed—as failing to present a live case or controversy—her request for a declaration of future benefits under 29 U.S.C. § 1132(a)(1)(B) (providing that a beneficiary may bring a civil action "to clarify [her] rights to future benefits"). She contends that *Lamuth v. Hartford Life & Accident Insurance Co.* supports the position that receipt of plan benefits does not moot a claim for a declaration of future benefits. 30 F. Supp. 3d 1036 (W.D. Wash. 2014). In *Lamuth*, the plaintiff sought "a declaration as to when she was first disabled … so as to avoid further conflict with regard to the Pre-existing Conditions Limitation." *Id.* at 1047. Peer's argument is different; rather than seeking a post-administrative-review determination of when *past* coverage was triggered, however, Peer requests a declaration as to her *future* eligibility. Before that claim ripens, Peer must first be deemed *not* "Totally Disabled" and that decision must then be administratively reviewed by Liberty. *See Heimeshoff v. Hartford Life Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) ("A participant's cause of action under ERISA … does not accrue until the plan issues a final denial."). Absent an adverse benefits determination, there is no ripe claim before us. As the district court observed, we "fail[] to see … how the Court may adjudicate [Peer's] disability status in the future."

DE 77. In response to the Eleventh Circuit's affirmance, Plaintiff filed a petition for rehearing *en banc*. The petition was denied. Both parties filed motions for appellate attorney's fees. The Eleventh Circuit denied Plaintiff's motion and transferred Defendant's motion to this Court.

Plaintiff's Entitlement to Attorney's Fees[3]

Subject to certain lodestar objections, Defendant concedes that Plaintiff is entitled to attorney's fees up and through August 2, 2017. That date is the date Plaintiff's claims became moot. DE 71 at 11. Under ERISA, a court may award fees to either party, provided the party achieves some success on the merits. 29 U.S.C. § 1132(g); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010). As Defendant correctly admits, Plaintiff's initiation of this litigation is the reason Defendant decided to retroactively award Plaintiff her insurance benefit. Defendant also argues, however, that Plaintiff should not receive any award of attorney's fees after August 2, 2017, because Plaintiff achieved no success on the merits after that date. The Court agrees. Fees are awardable pursuant to this Court's sole discretion. 29 U.S.C. § 1132(g). The Court's discretion is to be guided by a party's success on the central issues of the case. *Hardt*, 560 U.S. at 255. Here, Plaintiff's case was over on August 2nd. After that date, the central issues in the case (from Plaintiff's perspective) was that her case was not moot and that she wanted an adjudication on future, hypothetical determinations. Plaintiff achieved no success on these issues.

---

[3] The Court deems Plaintiff's motion for attorney's fees to be timely filed. Although there is some dispute over whether Plaintiff's motion was timely, the Court believes it would be unfair to deny Plaintiff's motion on that ground considering the fact that Plaintiff did try to file a motion for fees early in the case, but the Court informed Plaintiff that it was its customary practice not to take up fees motions until the return of a mandate from an appellate court. Thus, any delay by Plaintiff may well have been attributed to Plaintiff's intent to comply with the Court's practices.

The Court therefore grants Plaintiff's motion for fees as to entitlement, but only for fees up to and including August 2, 2017.

### Defendant's Entitlement to Attorney's Fees

This Court may award attorney's fees under ERISA to either party. *Hardt*, 560 U.S. at 245. Defendant argues that it should be awarded fees because (1) Defendant obtained success on the merits after August 2, 2017, (2) Plaintiff's case was frivolous after August 2, 2017, and (3) the manner in which Plaintiff's counsel litigated the case. The Court agrees with Defendant that Defendant achieved some success on the merits subsequent to August 2nd because after that date the case was no longer about Plaintiff obtaining a waiver of premium benefit. Instead, the case was about whether Plaintiff was entitled to some other kind of relief. Even so, in an abundance of caution, the Court deems it prudent to consider more than just Defendant's success on the merits. In considering whether Plaintiff's case was frivolous and the content of Plaintiff's counsel's filings, the Court is not required to use a specific factor-test, but it is a common practice for the following factors to aid a court in such a decision:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; (5) the relative merits of the parties' positions.

*Freeman v. Cont'l Ins. Co.,* 996 F.2d 1116, 1119 (11th Cir.1993). These factors may guide, but not control, the Court's decision. *Nachwalter v. Christie*, 805 F.2d 956, 961-62 (11th Cir. 1986). None of the factors are necessarily decisive; various permutations and combinations can support

an award of attorney fees. *Maes v. Standard Ins. Co.*, No. 99-17463, 2001 WL 427277, at *2 (9th Cir. Feb. 12, 2001) (citing *Paddock v. Morris*, 783 F.2d 844, 846 (9th Cir. 1986)).

(1) <u>Relative Bad Faith and the Relative Merits of the Parties' Positions</u>

A party may be adjudicated culpable and in bad faith for persisting in litigation after the party should have recognized a claim as frivolous. *Marquardt v. N. Am. Car Corp.*, 652 F.2d 715, 718 (7th Cir. 1981); *Cowden v. Montgomery Cnty.*, 653 F. Supp. 1072, 1074 (S.D. Oh. 1986). Here, Plaintiff should have known that her case was moot and that there was no basis to continue litigation without an adverse benefits determination. Similarly, Plaintiff should have known that she could not seek adjudication of hypothetical future events, particularly when Plaintiff's counsel attests to having litigated ERISA issues for over thirty years. DE 71 at 15. Nonetheless, Plaintiff's refusal to concede the mootness of her case resulted in motion practice for two summary judgment motions, one motion for judgment on the pleadings, multiple orders to show cause, interrogatories from the Court, hearing time, an appeal, and a motion for rehearing *en banc*. Plaintiff's litigation continued despite her being on notice of the lack of a legal basis for her case for almost an entire year. These factors warrant an award of fees.

(2) <u>Plaintiff's Ability to Pay</u>

Although the Court agrees with Defendant that there is some basis in the record to infer that Plaintiff has the ability to pay a fee award, DE 81 at 16-17, the Court concludes for the reasons set forth below that the fee award should be against Plaintiff's counsel only. As a result, this factor is neutral at best.

(3) <u>The Deterrent Value of an Award</u>

Here, Plaintiff had many opportunities to discontinue her case because the Court and Defendant kept putting Plaintiff on notice of the weaknesses of her arguments. Because Plaintiff persisted and because Plaintiff's counsel's filings were very difficult to comprehend, the Court used case management procedures it had never used in before. Ultimately, the Court's efforts at case management and the Court's caution in affording Plaintiff the benefit of the doubt were wasted—many judicial resources were wasted on this case. The purpose of fee awards under ERISA is to "deter conduct that does not fulfill the purpose of ERISA." *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 498 (D. Del. 1998). Plaintiff's conduct in this case should be deterred. This factor favors an award.

(4) <u>Benefits to All Plan Participants</u>

This factor is closely related to the deterrent value contemplated in the previous prong. When plans have to defend frivolous claims or pay "nuisance value" settlements on frivolous claims, there is a detrimental effect on the plan participants and beneficiaries as a class. For plans that are funded by trusts, which have limited assets, the defense costs and settlement payments deplete the funds available for administration and payment of legitimate claims. For plans that are funded by insurance policies, such as the plan at issue in the instant case, greater expenditures on defense of frivolous claims and payment of "nuisance value" settlements result in premium increases. Some plans are wholly or partially funded by the participants / employees, thereby directly impacting their cost of coverage. Where the premiums are wholly funded by the plan sponsor / employer, increases in premium often result in the decision to limit ever-rising premium expenses by diminishing and sometimes eliminating the available coverage. Benefit amounts may

be decreased. Eligibility periods (the time before qualifying for coverage) and elimination periods (the time after a disabling condition before qualifying for benefits) may be lengthened. All of these changes would save the plan sponsor premiums, but would reduce the quality of coverage available to the plan participants and beneficiaries. Thus, by deterring frivolous claims and lawsuits, and the attendant costs of litigation and settlements, the courts may help to maintain lower insurance premiums, and in turn, increased benefits to plan participants as a class. The Defendant's plan participants should not have to bear the cost of Plaintiff's litigation. This factor favors an award.

In summary, all of the relevant factors favor an award of fees to Defendant. This was an extraordinary case. Plaintiff and her counsel persisted in pressing a moot claim for almost an entire year, without legal support, in such a way that the Court struggled to bring the case to any sort of closure. Plaintiff then sought an appeal and a petition for rehearing *en banc*. After Plaintiff lost her appeal, Plaintiff increased her fee demand by ten thousand dollars. The success on the merits in this case, once Plaintiff's case was mooted, was Defendant's. This is not a case where Plaintiff had a colorable legal theory that ultimately proved to be unsuccessful—there was no legal basis for Plaintiff to continue to litigate her claims after August 2, 2017. For all of the foregoing reasons, Defendant is entitled to a reasonable attorney's fee for all of the fees it incurred subsequent to August 2, 2017.

The Amount of Defendant's Award

Defendant's counsel seeks compensation at the rate of $200 per hour. Defendant's request is supported by a legally sufficient affidavit, and Plaintiff's rate is more than reasonable as counsel

has been practicing in Florida for 25 years, is a partner at his firm, and focuses his practice on insurance defense litigation. DE 71-1.

Turning to the number of hours sought, Defendant seeks compensation for 130.7 hours beginning on August 3, 2017 and running through the conclusion of this case on July 25, 2018. The Court has reviewed Defendant's billings records and the docket in this case, and the requested amount is reasonable given the significant motion practice over the course of almost an entire year. Furthermore, the Court notes that Defendant's billing records exhibit a certain level of restraint, as exemplified by the fact that Plaintiff's counsel's billing records, over the course of a similar period of time, are a factor of 128% greater than Defendant's own billable records. *See id.* at 23-24. The Court therefore awards Defendant its full requested amount of $200 per hour times 130.7 hours for a total award of $26,140.

Defendant also seeks compensation for 50.5 hours litigating Plaintiff's appeal. Given that Plaintiff's appeal was fully briefed, and included a petition for re hearing *en banc*, the Court agrees with Defendant that 50.5 hours (and the total amount sought) is a reasonable amount[4] of time to defend its case on appeal. The Court therefore awards Defendant $200 per hour times 50.5 hours = $10,100 for appellate attorney's fees.

<u>The Nature of Defendant's Award</u>

This Court has discretion to award attorney's fees against a party, an attorney, or both. *E.g., Frank v. Liberty Life Assurance Co.*, 149 F. Supp. 3d 566, 575 (D. Md. 2015) ("An award of

---

[4] The Court notes that this amount closely mirrors the amount sought by Plaintiff for appellate attorney's fees ($10,800). DE 80.

attorney's fees [under ERISA] may be assessed against either a party or an attorney.").[5] One court reasoned that fees should be awarded against counsel for the following reasons:

> Counsel's responsibility is clear. He had the responsibility to assess the facts in light of the law. Counsel presumably has been trained to make this legal analysis and to reach an emotional, rational conclusion about the merits of plaintiff's claims. After doing so, if there were no reasonable basis for believing that plaintiff was unlawfully denied . . . benefits, counsel should have used his best efforts to convince plaintiff to conclude the case. If his efforts were unsuccessful, counsel should have considered whether to continue as plaintiff's counsel.

*Baker v. Greater Kan. City Laborers*, 716 F. Supp. 1231, 1229 (W.D. Miss. 1989). Here, the Court gave a detailed accounting of the history of this case as well as the content of Plaintiff's counsel's filings. If Plaintiff's counsel had brought Plaintiff's claims with cogent clarity, this case would have ended soon after August 2, 2017. But this case persisted for almost a year, the Court was in a systemic state of confusion, and Defendant expended considerable resources solely because of the *manner* in which Plaintiff's counsel litigated this case. Furthermore, Plaintiff's counsel, with his thirty years of ERISA experience, should have known that Plaintiff's case was moot and that there was no further justiciable controversy between the parties. Accordingly, the Court concludes that it would be unjust to award fees against Plaintiff when the source of the costs and delay in this case was primarily Plaintiff's counsel. The Court therefore exercises its discretion to award Defendant its fees against Plaintiff's counsel, but not Plaintiff.

The Amount of Plaintiff's Award

Plaintiff seeks a total fee award of $53,923.25 for all hours expended in this case, including appeal and Plaintiff's petition for rehearing *en banc*. This request utilizes an hourly rate of $400

---

[5] Defendant's Motion contains a large number of citations to cases where counsel was sanctioned directly. DE 71 at 8-9. The Court notes that it is also unaware of any record evidence that would apportion the blame for this case on Plaintiff as opposed to Plaintiff's counsel.

per hour. In support of the claimed $400 hourly rate, Plaintiff submitted his own affidavit. DE 48-4. That affidavit provides a statement of counsel's experience and the conclusory opinion that $400 is a reasonable rate. *Id.* It does not state that counsel has been awarded $400 per hour by any court or that counsel has collected $400 from any client. The affidavit is therefore insufficient as a matter of law. *Norman*, 836 F.2d at 1299.

Plaintiff also submits the affidavit of attorney Steven P. Krafchick. DE 48-3. Mr. Krafchick attests that he is licensed in the states of Washington and Oregon. *Id.* He states that he has handled one ERISA case in the state of Florida, without indicating which district the case was in or how recently the case was decided, and attests that $400 per hour is a reasonable rate. *Id.* The Court finds this affidavit to be unpersuasive.

The Court may rely on its own expertise for establishment of an appropriate rate. *Norman*, 836 F.2d at 1303. Here, based upon the history of this case and the content of Plaintiff's filings, the Court concludes that Plaintiff's counsel should be compensated at a rate equal to fifty percent greater than the rate the Court has awarded to counsel for the defense (also an experienced ERISA attorney) of $300 per hour (Defendant concedes that $300 would be appropriate compensation for Plaintiff in this case).

Turning to the number of billed hours, the Court has ruled that Plaintiff shall only be compensated for the number of hours running through August 2, 2017. Using that date, Plaintiff seeks compensation for approximately 64.3 hours. Pursuant to cases such as *Norman v. Housing Authority*, the Court has reviewed Plaintiff's billing records hour-by-hour. 836 F.2d at 1304. The Court is required to exclude billed hours that are excessive, or redundant, or otherwise unnecessary. *Id.* at 1301.

Before filing suit on March 7, 2017, Mr. Sullivan spent 15.5 hours preparing the Complaint. DE 48-5. This was excessive in light of Plaintiff's counsel's experience level and the fact that only the waiver of premium claim was justiciable. Courts in the Eleventh Circuit have routinely reduced fee claims based on excessive time spent by experienced litigators in preparing the Complaint. *See, e.g.*, *Campbell v. United of Omaha Life Ins. Co.*, 283 F. Supp. 3d 1138, 1150 (N.D. Ala. 2017) (reducing time spent preparing ERISA complaint from 8.8 hours to 6.8); *Duncan v. Golden Rod Broilers, Inc.,* No. 06-S-1076, 2008 WL 11422446, at *5 (N.D. Ala. July 22, 2008) (finding it "unreasonable to devote more than 5 hours to drafting the original complaint"). A straight-forward claim for the waiver of premium benefit should not have taken more than 5 hours to prepare for an attorney who has handled ERISA claims for 30 years. The Court adjusts Plaintiff's billed hours accordingly, a reduction of 10.5 hours.

Plaintiff's counsel spent 8.8 hours researching and drafting a response to a simple Rule 8 motion to dismiss, where the only issue was the failure to provide short and concise allegations. DE 48-5. He then spent 36.5 hours on researching and drafting a motion for summary judgment from May 10, 2017 through July 18, 2017. *Id.* The statement of facts for that motion was mostly cut and pasted from the Complaint. Much of the research was duplicative of that which was done for the Complaint. The arguments and authorities focused on regulatory issues that were never adjudicated. In short, these hours were mostly unnecessary. The Court concludes that Plaintiff's response to the Rule 8 motion and Plaintiff's motion for summary judgment should be reduced to 15 hours, a reduction of 30.3 hours.

For the foregoing reasons, the Court reduces the number of hours awardable to Plaintiff (for time billed through August 2, 2017) by (30.3 + 10.5) 40.8 hours. Plaintiff's 64.3 billed hours are therefore reduced to 23.5 hours.

For the foregoing reasons, the Court awards Plaintiff fees at $300 per hour times 23.5 hours for a total award of $7,050.00. The Court also awards Plaintiff her requested amount of costs ($1,253.25) without comment.

<u>Conclusion</u>

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Attorney's Fees [DE 48] is **GRANTED IN PART AND DENIED IN PART** insofar as Plaintiff is awarded $7,050.00 in fees and $1,253.25 in costs. Defendant's Motion for Attorney's Fees [DE 71] and Defendant's Motion for Appellate Attorney's Fees [DE 86] are both **GRANTED** and Defendant is awarded $26,140 for trial-level attorney's fees and $10,100 for appellate-level attorney's fees. This award is against Plaintiff's counsel only for the reasons set forth above.[6]

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 8th day of August, 2019.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

[6] The Court exercises its discretion not to award Defendant costs because Defendant did not seek costs in its wherefore clause and did not attach any cost-related invoices to its Motions.